IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ENGIE RESOURCES, LLC, | § | |
| ENGIE ENERGY MARKETING NA, INC., | § | |
| BASA RESOURCES INC. | § | |
| | § | No. _____ |
| V. | § | |
| | § | |
| VIRIDITY ENERGY SOLUTIONS INC. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

COMES NOW ENGIE RESOURCES, LLC, ENGIE ENERGY MARKETING NA, INC and BASA RESOURCES INC., (hereinafter jointly referred to as "Plaintiff"), who complain of VIRIDITY ENERGY SOLUTIONS INC. (hereinafter referred to as "Defendant" or "Viridity"), and will show the Court as follows:

**I.**

1. This is a breach of contract (with underlying negligence) and breach of indemnity agreement action under two service contracts. Plaintiff seeks monetary relief in excess of $10,000,000.00. Plaintiff reserves the right to amend this required statement of relief if necessary.

**II. PARTIES**

2. ENGIE RESOURCES, LLC ("Engie Resources") is a Delaware limited liability company with a principal place of business in Houston, Harris County, Texas.

3. ENGIE ENERGY MARKETING NA, INC. ("Engie Marketing") is a Texas Foreign For-Profit Corporation with a principal place of business in Houston, Harris County, Texas.

4. BASA RESOURCES INC. ("BASA") is a Texas Corporation with a principle place of

business in Dallas, Texas. BASA fully and irrevocably transferred and assigned to Engie any and all claims, rights and interests (including any unknown and/or unanticipated claims now or arising in the future), including any and all claims, rights and interests BASA has to any proceeds from any litigation, that BASA has or will have against Viridity arising from or related to the issues presented in this lawsuit. This Assignment includes the right of Engie to bring the claim in, by, through and on behalf of BASA. This Assignment also includes BASA's rights and interests in any of the proceeds from the Viridity claims).

5. VIRIDITY ENERGY SOLUTIONS INC. ("Viridity") is a Delaware corporation and a wholly owned subsidiary of Ormat Technologies, Inc, with a principal office address at 6410 Plumas St, Reno, NV 89519 and is authorized to do business in the State of Texas. It owns and operates and controls business assets in Texas, and financially profits from doing business in Texas. It may be served with process through their registered agent, **Registered Agent Solutions, Inc. at Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, TX 78735**, or any other address that it may be found.

### III.  JURISDICTION/VENUE

6. Jurisdiction is proper in the Court under 28 U.S.C. § 1332 because there is complete diversity between Plaintiffs and Defendant and because the amount in controversy exceeds $75,000.

7. The contracts made the basis of this suit were performed, in whole or in part, in Stephens County, Texas. Specifically, the QSE and scheduling services made the basis of this suit were provided by Viridity to BASA's oil & gas production facilities located in Stephens County, TX. Further, Defendant was appointed as the Qualified Scheduling Entity (QSE) for each of the BASA facilities in Stephens County.

8.     Therefore, venue is proper in the Abilene Division of the Federal District Court for the Northern District of Texas under 28 U.S. Code §1391 because the events or omissions giving rise to Plaintiffs' claims occurred in Stephens County, Texas, which is within this Court's Abilene Division.

## IV.  FACTS

9.     <u>Overview</u>:  Engie Resources LLC is a Retail Energy Provider providing electricity to thousands of Texas commercial businesses.  Engie Marketing is a Qualified Scheduling Entity ("QSE") with a Retail Load (i.e. amount of energy in MWh delivered at any specific point on a system).  Engie and Engie Marketing entered into a Services Agreement for Engie Marketing to act as Engie's QSE.  Hereinafter, Engie and Engie Marketing shall be referred to collectively as "Engie".

10.    Responsive Reserve Service ("RRS") is an important product that the Electricity Reliability Council of Texas ("ERCOT") uses to maintain the reliability and stability of the Texas electrical grid.  Resources providing RRS are required to quickly (within 10 minutes) provide an agreed upon MW amount to address frequency deviations on the electrical grid.  RRS is arranged by QSEs who represent Resource Entities (entities that own or control Generation Resources and Load Resources).

11.    RRS can be provided by large electricity consumers who can reduce their electricity consumption on demand.  ERCOT requires retailers such as Engie to purchase RRS, either from ERCOT or from third party consumers.  At all relevant times herein, Engie purchased RRS from a third party oil & gas producer known as BASA Resources Inc. ("BASA").  RRS must be scheduled by an ERCOT-approved QSE.  Defendant Viridity is a QSE for ERCOT.  If the sale of RRS is not scheduled by the QSE as required by ERCOT, ERCOT will not recognize the

third-party sale.  If ERCOT does not recognize the third-party sale, ERCOT will charge the purchaser for the shortfall at the current market price of RRS.

12. During an emergency such as Winter Storm Uri (applicable here), the cost of RRS reached an all-time high.  During Winter Storm Uri, Viridity negligently failed to schedule RRS for Engie in accordance with ERCOT protocols, and as a result, ERCOT charged Engie nearly $47.5 million dollars due to the RRS schedule shortfall incurred from February 16-19, 2021:

| Date | ERCOT Assessment to Engie |
| --- | --- |
| February 16, 2021 | $11,606,206.50 |
| February 17, 2021 | $13,447,633.50 |
| February 18, 2021 | $13.399,514.10 |
| February 19, 2021 | $10,199,217.60 |
| **Total** | **$47,487,775** |

*Relevant Contracts*

13. **Exhibit 1:** On November 1, 2016, Viridity and Engie signed a Master Services Agreement pursuant to which Viridity agreed to provide various services to Engie retail customers.  See **Exhibit 1** (the "Master Agreement").  Paragraph 13 of the Master Agreement states that "*Engie and its customer, BASA Resources Inc.[1] ("BASA") have entered into a bilateral transaction whereby BASA will sell to Engie Responsive Reserve Capacity*" and that "*Viridity and BASA have a entered into a QSE Services Agreement whereby Viridity will provide QSE services to BASA to enable BASA to sell such capacity to Engie.*"  The Master Agreement obligates Engie to pay Viridity's monthly fee for such QSE services, which Engie did.

---

[1] BASA Resources Inc. operates oil & gas production facilities in Stephens County, TX.

14.     **Exhibit 2:** On December 20, 2016, Viridity and BASA executed the "Responsive Reserve Service (RRS) Agreement" which includes the QSE Services referenced above. See **Exhibit 2** (the "RRS Agreement"). Viridity is referred to therein as the "Qualified Scheduling Entity ("QSE"). Pursuant thereto, BASA purchased scheduling services (i.e. QSE Services) from Viridity to enable BASA to schedule, and thereby sell, its ability to curtail electrical load. In particular, BASA purchased Viridity's QSE services in order to schedule BASA's sale of 15 MW of RRS capacity to Engie. The sale of BASA's RRS capacity to Engie, and the need to properly schedule that transaction with ERCOT, are specifically included in **both** of the foregoing agreements with Viridity. See the quoted text from **Exhibit 1** paragraph 13 above, and **Exhibit 2**, paragraph IIC which states, "*Specifically the first 15 MW[2] that Viridity schedules with ERCOT will not be offered into the ERCOT market but will be scheduled for GDF Suez.*"[3]

15.     **Exhibit 3:** On January 3, 2023, BASA assigned its claims against Viridity to Engie pursuant to the Settlement Agreement attached hereto. See **Exhibit 3** (the "Settlement Agreement"). Engie's claims herein that are based on RRS Agreement, arise from Engie's status as an assignee of BASA's claims pursuant to the Settlement Agreement, and as a third party beneficiary of the RRS Agreement.

*Winter Storm Uri (February 2021)*

16.     On the morning of February 15, 2021, Winter Storm Uri hit Texas. Extreme cold pushed demand for power to record levels. At the same time, temperatures well below freezing caused power plants to shut down as generating equipment froze or ran out or fuel.

17.     On Monday, Feb. 15 at 01:23, ERCOT deployed all RRS, and customers providing RRS (such as BASA), curtailed their usage by shutting down their operations. ERCOT instructed all

---

[2] In Jan 2019, Viridity and BASA executed Amendment No. 2 increasing the 15 MW of RRS to 27 MW

5

RRS to remain deployed until recalled. BASA complied and remained continuously curtailed for 5 days. On Friday, Feb. 19 at 09:21, ERCOT recalled the deployment.

18. Unfortunately, throughout the deployment, Viridity took the incorrect and unfounded position that once deployed, BASA's load resources could no longer schedule RRS. Specifically, Viridity's Head of Operations advised BASA's CFO:

> *"Given the fact that all the resources are offline, and we expect ERCOT to maintain the event through most of today, we will not be offering any of the sites in the ERCOT market tomorrow.*
>
> *<u>Given that there will be no load resources, there will be no bilateral which can be scheduled to those units</u>."*

See **Exhibit 4**, email from Mike Pavo to Nathan McGough, on Mon, Feb 15, 2021 at 9:43 AM.

19. In subsequent litigation against ERCOT, Mr. Pavo took that same position in his deposition testimony:

> *Q (by ERCOT)· · Isn't that Viridity's whole theory in this case? That it would have to have had new capacity that was loaded and ready to be interrupted in order to submit a trade for it on February 16th?*
>
> *A (by Pavo)· · Well, that's what the protocols say is, yes, for a new schedule, you would have to have new capacity available.*

See **Exhibit 5**, Mike Pavo deposition, page 157, line 3-10.

20. Even before providing this erroneous and unsubstantiated advice, Viridity (without BASA's knowledge or consent) had already begun implementing its business decision not to schedule the RRS. Specifically, as was revealed in subsequent discovery, Viridity's QSE's shift report on 2/15/2021 contains this note:

| Caller | Time | Name | Comment |
|---|---|---|---|
| Viridity | 8:48 | Justin Butt[4] | Per Justin. DO NOT schedule any of Viridity's Bilateral deals with Prior and Suez. |

---

[3] "GDF Suez" subsequently changed its name to Engie Resources, the Plaintiff in this action.
[4] Pavo testified that Justin Butt is a Viridity employee. Either an operator or manager of the 24-hr desk.

6

See **Exhibit 6**, ERCOT Shift Report dated 2/15/2021.

21. BASA, in reliance on Viridity's expertise and (negligent) advice that deployed resources could not be scheduled (and without knowledge that Viridity had already implemented its decision not to schedule), subsequently acquiesced to Viridity's faulty advice.

22. As a result of the Viridity failure to schedule RSS, ERCOT did not recognize the 27 MW RRS purchase & sale transaction between BASA and Engie, and ERCOT charged Engie almost $47.5 million dollars for the 27 MW RRS shortage during the winter storm.

23. Engie and Viridity thereafter jointly prosecuted a complaint against ERCOT at the Public Utility Commission of Texas challenging those charges. Now, after 2 ½ years of litigation, discovery, depositions, and a two day trial, the Public Utility Commission of Texas ruled that that Viridity's unilateral advice and business decision was clearly wrong: a deployed load resource does not lose its capacity to providers simply by being deployed; deployed resources can in fact schedule RRS[5]; ERCOT protocols do not prohibit this at all[6]. See Commission Order dated Oct 3, 2024 in PUC Docket No. 53377, attached as **Exhibit 7** (the "PUCT Order").

24. Additionally, the SOAH Administrative Law Judge, who presided over the 2 ½ years of litigation issued the following Analysis[7]:

> *"There are also indications that Viridity knew, or should have known, that the DAM was functioning. For instance, on the afternoon of February 15, Mr. Douglas with PPM had emailed Mr. Pavo with Viridity relaying that an ERCOT employee had confirmed that "**a QSE is able to continue the curtailment into the next day without assigning new capacity**.*

---

[5] PUCT Order, Conclusion of Law #17. "A deployed load resource does not lose its capacity to provide RRS simply by being deployed."
[6] PUCT Order, Conclusion of Law #18. "The Nodal Protocols do not prohibit a QSE from allocating ancillary service resource responsibility to deployed load resources."
[7] ALJ Proposal for Decision at page 87 in PUCT Docket No. 53377

7

25. Finally, the SOAH Administrative Law Judge, issued the following Recommendation[8]:

> "Ultimately, *Viridity made a business decision* not to confirm trades during the Disputed Payment Period[9]. As a result of that decision, Engie could not meet its obligation to provide RRS on those days and was charged approximately $47.5 million by ERCOT.
>
> If Engie wants to recover the approximately $47.5 million it was charged by ERCOT for not providing RRS, *then the parties and their trading partners should look to their contracts with each other and avail themselves of any legal remedies those agreements provide.*"

Accordingly, Engie accepts the ALJ's Recommendation (and the PUCT Order), and looks to the Master Agreement (**Exhibit 1**) and the RRS Agreement (**Exhibit 2**) for redress in this litigation from Viridity.

## V. CAUSES OF ACTION

### A. Breach of Contract (Indemnification under the Master Agreement (Exhibit 1))

26. Plaintiff incorporates by reference as though set forth verbatim paragraphs 1-25 as more fully set forth above.

27. The Master Agreement contains both a general and specific indemnity provision.

28. The general indemnity provision set forth in paragraph 8 provides that *Viridity shall indemnify Engie for losses and damages that arise or are related to Viridity's provision of demand response and energy services hereunder*.

29. The specific indemnity provision set forth in paragraph 13 provides that *"Viridity shall indemnify Engie for any costs, losses, fines or penalties that Engie incurs as a result of Viridity's failure to schedule the capacity as instructed by BASA."*

30. Viridity may argue that it was BASA, not Viridity, who made the decision not to schedule, and that Viridity was merely following BASA's instructions. The litigation with

---

[8] ALJ Proposal for Decision at page 95 in PUCT Docket No. 53377

ERCOT over the last 2.5 years reveals that argument is patently false. Specifically, it was Viridity who advised BASA that it could not schedule deployed resources. (See **Exhibit 4**, 2/15/2021 email from Mike Pavo telling BASA that, "*Given that there will be no load resources, there will be no bilateral which can be scheduled to those units.*") And it was Viridity's employee (Justin Butt) who previously instructed its QSE not to schedule the BASA/Engie RRS bilateral transaction (see **Exhibit 6**, ERCOT Shift Report, on 2/15/2021 at 8:48 AM). BASA, in reliance on Viridity's expertise in this complex and unfamiliar area, merely looked to Viridity's advice and decision making on how to proceed under these circumstances, which advice was proved to be unreasonable, lacking in any support, and clearly wrong.

31. Additionally, the ERCOT litigation and discovery shows that Viridity's actions were also driven by self-interest. Had Viridity scheduled the BASA RRS, Viridity would have been liable to ERCOT to provide that RRS service. And if the RRS could not be provided (as Viridity feared based on its erroneous belief that deployed resources could not provide RRS service), then Viridity would be liable to ERCOT for millions in real time costs of RRS. RRS prices were at record highs during Winter Storm Uri, Viridity panicked, and decided to avoid RRS liability for itself by not scheduling with ERCOT. As a result of Viridity's conduct and self-serving decision making, this created $47.5 million of liability for Engie to ERCOT <u>that should not have otherwise existed</u>.

32. Accordingly, pursuant to the specific indemnity clause, Engie seeks indemnification from Viridity for the $47.5 million of ERCOT RRS charges that Engie incurred due to Viridity's advice, decision, and failure to schedule the RRS as described above.

33. Additionally, pursuant to the general indemnity clause, Engie seeks indemnification from

---

[9] The Disputed Payment Period was from February 16-19, 2021.

Viridity for Engie's $47.5 million of *losses and damages that arose from and are related to Viridity's provision of demand response and energy services.*

### B. Breach of Contract (and underlying Negligent conduct) (Indemnification under the RRS Agreement (Exhibit 2)

34. Plaintiff incorporates by reference as though set forth verbatim paragraphs 1-33 as more fully set forth above.

35. The RRS Agreement, Section II – Responsive Reserve Services Program, provides among other things:

> *G. Viridity shall be liable to the Customer [BASA] for financial consequences caused by Viridity's:*
> - *Failure to properly submit schedules accurately and on-time".*
> - *Negligence*

36. The RRS Agreement, Section III – Miscellaneous, provides:

> *G. Each Party shall indemnify and hold harmless the other Party from all costs and damages resulting from the indemnifying party's gross negligence.*

37. Viridity's faulty belief that deployed resources could not be scheduled to provide RRS; Viridity's erroneous and self-serving advice to BASA that it could not schedule its deployed resources to provide RRS; and Viridity's failure to schedule the RRS as a result thereof, triggers Viridity's contractual liability and indemnification obligations to BASA under Section II and III of the RRS Agreement based on Viridity's failure to schedule, negligence and gross negligence.

38. Engie, as a third party beneficiary of the RRS Agreement, and as the assignee of BASA's claims against Viridity arising under the RRS Agreement, seeks $47.5 million in contractual damages and indemnification from Viridity for the aforementioned scheduling failure, negligence, and gross negligence of Viridity.

## VI.  DAMAGES

39. As a result of Defendant's actions, ERCOT charged Engie (and Engie paid) almost $47.5 million dollars for the RRS schedule shortfall.  Engie also seeks interest and attorney's fees for the breach of contracts by Viridity.

## VII.  CONDITIONS PRECEDENT

40. All conditions precedent have been performed or have occurred

## PRAYER

WHEREFORE PREMISES CONSIDERED Plaintiff requests that Defendant be cited to appear and answer and that the Court exercise its jurisdiction over Defendant and upon final hearing of this case judgment be had against Defendant under the causes of action stated for the following elements of damage:

1. Actual damages;

2. Pre and post-judgment interest;

3. Reasonable and necessary attorney's fees;

4. All costs of suit; and

5. Such other and further relief to which Plaintiff may be justly entitled

Respectfully submitted,

**DAVENPORT LAW FIRM, P.C.**

*/s/ Scott J. Davenport*
**SCOTT J. DAVENPORT**
State Bar No.: 00790563
*(Admitted to Northern District of Texas: 1/25/96)*
2009 Lubbock Street
Houston, Texas 77007
(713) 963-4898
(713) 963-4899 (facsimile)
Email:  scottd@davenport-law.com
**COUNSEL FOR PLAINTIFFS**